UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
ANDREW GILMARTIN,

         Plaintiff,

  -against-                       **MEMORANDUM AND ORDER**

CAROLYN W. COLVIN,           15-cv-6062-FB
ACTING COMMISSIONER OF
SOCIAL SECURITY,

         Defendant.
------------------------------------------------x

*Appearances:*

| *For the Plaintiff* | *For the Defendant* |
|---|---|
| CHRISTOPHER J. BOWES | ROBERT L. CAPERS |
| 54 Cobblestone Drive | United States Attorney |
| Shoreham, New York 11786 | Eastern District of New York |
| | 271 Cadman Plaza East |
| | Brooklyn, New York 11201 |
| | |
| | By: RACHEL G. BALABAN |
| |     Assistant United States Attorney |

**BLOCK, Senior District Judge:**

     Andrew Gilmartin ("Gilmartin," "plaintiff," or "claimant") seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application

for disability and disability insurance benefits under the Social Security Act ("SSA").[1] Both parties move for judgment on the pleadings. For the reasons stated below, plaintiff's motion is DENIED, and the Commissioner's motion is GRANTED.

## I.

A resident of Centerport, New York, Gilmartin is a 38-year-old high school graduate who previously managed a musical band's tour and a supermarket's delicatessen. He labored until June 13, 2012, when he allegedly became unable to work due to constant lower back pain radiating to his left lower extremity. He filed an application for disability and disability insurance benefits on April 9, 2013. Gilmartin's claim was initially denied on May 31, 2013. At Gilmartin's request, a hearing was held before an Administrative Law Judge ("ALJ") on May 27, 2014.

On June 4, 2014, the ALJ held that Gilmartin was not disabled within the meaning of

---

[1] Title II of the SSA provides for the payment of *disability insurance benefits* to those whose disability prevents them from pursuing gainful employment via the Social Security disability insurance ("SSDI") program. 42 U.S.C. § 423. The SSA's sixteenth title provides for the payment of *disability benefits* via the Supplemental Security Income ("SSI") program. *Id.* § 1381. When a person files for disability, he or she typically seeks benefit under both programs, *see Heckler v. Day*, 467 U.S. 104, 106–07 (1984) (explaining programs), and the two often merge in practical analysis, *see* AR 12. Gilmartin applied for both benefits and insurance.

2

the SSA. Applying the SSA's five-step sequential evaluation process,[2] the ALJ determined that (1) Gilmartin had not engaged in substantial gainful activity since June 13, 2012, the alleged onset date, and (2) he suffered from one severe impairment: lumbar degenrative disc disease with radiculopathy. Nonetheless, the ALJ concluded that this impairment did not meet or medically equal the SSA's requisite level of severity, as set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, so as to trigger his automatic classification as disabled.

The ALJ then determined that Gilmartin had the residual functional capacity ("RFC") to perform less than the full range of sedentary work, as defined in 20 C.F.R. § 404.1567(a). Namely, the ALJ found that Gilmartin could "occasionally lift ten pounds, sit approximately six hours, stand or walk for approximately two hours in an eight hour day with normal breaks," "occasionally climb ramps or stairs," and "occasionally balance and stoop." AR 14–15. While Gilmartin was determined to have an "unlimited" ability to "push/pull with . . . [his] upper extremities," the ALJ concluded that he was "limited to [only] occasional push/pull with [his] lower extremities." *Id.* at 15. He could, however, "never climb ladders, ropes or scaffolds" and "never kneel, crouch or crawl." *Id.* In reaching this conclusion, the ALJ

---

[2] SSA regulations establish a five-step process for evaluating disability claims. The Commissioner must find that a claimant is disabled if she determines "(1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one that conclusively requires a determination of disability, . . . (4) that the claimant is not capable of continuing in his prior type of work, [and] (5) there is not another type of work the claimant can do." *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing 20 C.F.R. § 404.1520(b)-(f)). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at the fifth step. *See* 20 C.F.R. § 404.1560(c)(2); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

relied on both "objective medical evidence," consistent with the requirements of 20 C.F.R. § 404.1529, and "opinion evidence," in accordance with 20 C.F.R. § 404.1527.

The ALJ thereupon applied this RFC to the remaining steps. As to step four, the ALJ decided that the transferability of Gilmartin's job skills was "not an issue in this case because the claimant's past relevant work is unskilled," AR 18, as authorized by 20 C.F.R. § 404.1568(a). Moving to step five, the ALJ concluded that Gilmartin could perform work pursuant to the Medical Vocational Guidelines, 20 C.F.R. § 404, Subpart P, Appendix 2, relying in part on the testimony of one vocational expert. In particular, in light of Gilmartin's age, education, past relevant work experience, and RFC, the ALJ pointed out that he could perform a number of jobs existing in significant numbers in the national economy. The ALJ gave three examples: order clerk, document prep worker, and scale operator.

The Appeals Council denied Gilmartin's request for review on August 18, 2015. The ALJ's decision thereby became the Commissioner's final one. Gilmartin has sought timely review, expressly arguing that the ALJ violated the treating physician rule and implicitly contending that the ALJ did not properly weigh his own testimony.[3]

## II.

"In reviewing a final decision of the Commissioner, a district court must determine

---

[3] While Gilmartin never makes this second argument with any detail, he does fault the ALJ for not fully crediting his testimony regarding his limitations in the midst of discussing the treating physician rule. Pl.'s MSJ at 20. For the sake of comprehensiveness, this Order and Memorandum will address Gilmartin's explicit and implicit reasons for reversal.

whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also* 42 U.S.C. § 405(g). Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *cited in, e.g.*, *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). If contradictions appear in the record and an ALJ fails to reasonably explain why he or she opted for one interpretation over another, the Commissioner's findings cannot stand. *See, e.g.*, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("'[T]he ALJ cannot arbitrarily substitute his [or her] own judgment for competent medical opinion . . . .'"); *cf. Selian*, 708 F.3d at 420 ("To the extent that record is unclear, the Commissioner has an affirmative duty to 'fill any clear gaps in the administrative record' before rejecting a treating physician's diagnosis."). "[T]he reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983).

### A. Treating Physician Rule

Plaintiff first argues that the ALJ failed to correctly apply the treating physician rule when he did not give controlling weight to the opinion of Doctor Thomas Dowling ("Dowling"), his treating physician, that Gilmartin could only "sit less than 4 hours during an 8-hour workday." Pl.'s MSJ at 19; *see also* AR at 17–18. The treating physician rule dictates that "the opinion of a claimant's treating physician as to the nature and severity of the

5

impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)). For purposes of this rule, "medical opinions" include "statements from physicians and psychologists and other acceptable medical sources," 20 C.F.R. § 404.1527(a)(2), and can take a variety of forms, *cf. Philpot v. Colvin*, No. 12-CV-291 (MAD/VEB), 2014 WL 1312147, at *19 (N.D.N.Y. Mar. 31, 2014) (noting that the relevant treating physician's opinion had been embodied in a checklist); *Gray v. Astrue*, No. 09-CV-00584, 2011 WL 2516496, at *5 (W.D.N.Y. June 23, 2011) (same); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (same). If the ALJ does not give a treating physician's opinion controlling weight, he or she must provide "'good reasons' for the weight given to that opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004). The ALJ must apply this same standard to the opinion evidence of non-examining sources. 20 C.F.R. § 416.927(e)(2)(ii); *see also Wells v. Comm'r*, 338 F. App'x 64, 67 (2d Cir. 2009) (citing regulatory predecessor).

As his decision explains, the ALJ gave little weight to the conclusion reached by Dowling regrading Gilmartin's sitting limitations because Dowling failed to "explain the basis for a sitting limitation" in the face of the following medical evidence: (1) an examination by Doctor Raphael Davis ("Davis"), which "failed to yield abnormal neurological findings"; (2) two independent medical examinations by Doctor Anthony Spataro ("Spataro"), who

ultimately "concluded that the claimant could perform sedentary work on a limited basis" such as "a desk job"; (3) a series of MRI scans which indicated no severe spinal cord damage; and (4) Dowling's various factual observations regarding plaintiff's physical condition, including Gilmartin's absence of any sensory deficits and "gross weakness" in his lower extremities and his otherwise normal reflexes. AR 16–18, 164–221, 299.

The ALJ extracted yet more support from other objective records: (1) testimony by Gilmartin's physical therapist indicating that he was "making steady progress," and (2) Dowling's and Davis' decision to pursue and persist in a conservative treatment regimen centered on admittedly effective medication rather than surgical intervention. *Id.* at 17, 37, 285–99, 117–31. But the ALJ did not just rely on such records. As he opined, the daily activities which Gilmartin admitted to undertaking were also "not consistent with his allegation of being unable to work in any capacity." *Id.* at 17; *see also id.* at 32–34. From using a computer for social interaction to walking and driving every day, his "daily activities tend[ed] to show that he is capable of performing a wide range of sedentary work." *Id.* While the ALJ rejected part of Dowling's opinion, he did so in reliance on all this foregoing, albeit conflicting, evidence.

As such, the ALJ's decision to give limited weight to Dowling's single conclusion was supported by "specified reason[s]," mined from an extensive record, *Otts v. Comm'r*, 249 F. App'x 887, 889 (2d Cir. 2007), and "contradictory medical evidence," *Eiden v. Sec'y of Health, Educ. & Welfare*, 616 F.2d 63, 64 (2d Cir. 1980) (relying on *Alvarado v. Califano*, 605 F.2d 34, 35 (2d Cir. 1979)) *see also, e.g.*, *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362

7

(N.D.N.Y. 2007) ("[T]he less consistent an opinion is with the record as a whole, the less weight it is to be given."). Conflicts undeniably existed, as the record reveals and the parties seemingly acknowledge. Def.'s MSJ at 13; *see also* Pl.'s MSJ at 20. But an ALJ, when armed with credible evidence, may resolve "[g]enuine conflicts in the medical evidence" by rejecting a treating physician's questionable assertion. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see also, e.g.*, *Rutherford v. Schwiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("On an appeal such as this, we are faced with a simple reality which appellants often overlook, namely, that factual issues need not have been resolved by the Secretary in accordance with what we conceive to be the preponderance of the evidence."). By explaining how and why Dowling's opinion was contradicted by the record's other substantial evidence, the ALJ avoided any reliance on "his own intuition," *Sanchez v. Colvin*, No. 14 CV 1008, 2015 WL 4390246, at *15 (E.D.N.Y. July 14, 2015), or "sheer speculation," *Selian*, 708 F.3d at 421, and provided the "good reason" sufficient to justify his ultimate decision. *See, e.g.*, *Halloran*, 362 F.3d at 32 ("[T]he opinion of the treating physician is not afforded controlling weight where . . . [these] opinions . . . are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."); *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) (upholding the ALJ's determination "[where] portions of the ALJ's decision and the evidence before him indicate[d] that his conclusion was supported by substantial evidence").

**B. Credibility**

By implication, plaintiff next argues that the ALJ erred by finding that his statements concerning the intensity, persistence, and limiting effect of his impairments were not entirely

credible. No ALJ may reject such subjective statements "*solely* because the available medical evidence does not substantiate" them. 20 C.F.R. § 416.929(c)(2) (emphasis added); *see also Hilsdorf v. Comm'r*, 724 F. Supp. 2d 330, 350 (E.D.N.Y. 2010) (quoting regulation). However, an ALJ must "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [claimant's] statements and the rest of the evidence." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also Puente v. Comm'r*, 130 F. Supp. 3d 881, 894 (S.D.N.Y. 2015) (quoting regulations). Based on such a review, he or she may then "properly choose not to credit . . . [an applicant's] claims regarding . . . impairments" if "the other evidence in the record . . . contradict[s] them." *Brooks v. Comm'r*, No. 15 Civ. 4707 (GWG), 2016 WL 4940208, at *9 (S.D.N.Y. Sept. 15, 2016); *see also, e.g., Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (ALJ "is not required to accept the claimant's subjective complaints without question[.]"); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) ("It is the function of the Secretary, not ourselves, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.").

As already noted, the record here provides ample support for the ALJ's decision to reject the claimant's assessments of his own disability. *See* AR 15–18 The ALJ hence did no less than what the law allows and requires, utilizing credible medical findings and testimonial evidence so as to "arrive at an independent judgment . . . regarding the true extent of the pain alleged by the claimant," *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *accord Genier*, 606 F.3d at 49, that was not "patently unreasonable." *Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997). Consequently, substantial evidence

supports the ALJ's interpretation of Gilmartin's testimony, and his decision cannot be deemed so unreasonable as to be reversed. *See Genier*, 606 F.3d at 49 ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." (quoting *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982))).

## III.

For the aforementioned reasons, plaintiff's motion is DENIED, and the Commissioner's motion is GRANTED.


**SO ORDERED**

                                              /S/ Frederic Block
                                              FREDERIC BLOCK
                                              Senior United States District Judge

Brooklyn, New York
February 7, 2017